[No. B034528. Second Dist., Div. Four. Dec. 23, 1988.]

ZILLER ELECTRONICS LAB GMBH, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
GROSH SCENIC STUDIOS, Real Party in Interest.

**COUNSEL**

Pepper, Hamilton & Scheetz, Peter H. Mason and Victoria Pynchon for Petitioner.

No appearance for Respondent.

Bleiweis, Belshaw, Melka & Wall and Scott Wall for Real Party in Interest.

**OPINION**

WOODS (A. M.), P. J.—In this original proceeding in mandate a foreign defendant challenges a trial court's denial of its motion to quash a second service of process for lack of minimum contacts. The motion was denied on the ground that the issue has been determined adversely to defendant on its prior successful motion to quash the first service.

The critical question presented is the effect, if any, of a determination that minimum contacts exist when the motion to quash is nevertheless granted for lack of effective service of process. Must the prior determination of minimum contacts be deemed a nullity and the issue treated de novo or is the prior determination binding when the nonresident defendant is reserved and reasserts the issue in a second motion to quash?

We conclude that a trial court's granting of the first motion to quash on another ground did not render its initial determination of minimum contacts "dictum" or an act in excess of the trial court's jurisdiction. The prior determination was binding upon the parties.

We also conclude that reconsideration is appropriate in this case.

The material facts are simple and not in dispute.

Defendant petitioner, Ziller Electronics Lab GmbH, is a corporation organized and existing under the laws of West Germany.

Plaintiff, Grosh Scenic Studios (Grosh) sues defendant for breach of contract and other causes relating to defendant's alleged breach of its ongoing oral contract with plaintiff to supply certain product line in consideration for plaintiff promoting defendant's products in the United States.

Defendant was served with process by mail in West Germany.

Defendant specially appeared by motion to quash service of process pursuant to Code of Civil Procedure section 418.10.[1] The motion was based

---

[1] All further statutory references are to that code unless otherwise indicated.

upon a claim of lack of minimum contacts with the forum state and a claim that service was ineffective because it did not comply with the Hague Convention on Service of Process Abroad.

Plaintiff opposed the motion on both grounds.

The motion was heard October 6, 1987, by Judge Fred Woods. The judge announced his tentative ruling finding minimum contacts but granting the motion due to lack of effective service of process. Argument was first heard on the minimum-contacts issue and the court declared "[i]f the facts as you have portrayed them are true on that issue, I am going to find that there are minimum contacts and purposeful business activities under the Asahi case and find jurisdiction." The court then heard argument on the service of process issue and then announced "I am going to find that there was no service of process in accordance with the law. So the motion to quash will be granted on that basis. [¶] However, with respect to jurisdiction in the primary sense over the subject matter [sic: person], that is denied. . . ."

Plaintiff re-served defendant in West Germany in accordance with the Hague Convention.

Defendant again appeared specially by a second motion to quash. The motion claimed lack of minimum contacts and was supported by new, more detailed allegations of material facts.

Plaintiff opposed the motion on the ground that defendant was bound by the determination on the first motion that minimum contacts exist. Plaintiff submitted no declarations or other evidence on the issue.

The motion was heard May 3, 1988, and denied by Judge Ricardo Torres on the ground that minimum contacts had been determined to exist on the first motion and he refused to set aside the ruling of another judge. The court commented that defendant should have sought immediate reconsideration by Judge Woods or writ review.

The present petition followed.

I

Petitioner contends that the October 6, 1987, determination that minimum contacts exist is either nonbinding dictum (because unnecessary to the granting of the first motion to quash) or an act in excess of the trial court's jurisdiction (because the court may not render any binding ruling against a defendant who it determines is not subject to its jurisdiction).

## A.

Characterization of respondent's determination of minimum contacts as nonbinding "dictum" is misplaced. ■ Distinction between holdings and dictum is appropriate only for purposes of the doctrine of stare decisis. That doctrine applies only to determine the binding effect of published decisions of appellate courts upon other cases. It is inapplicable to determining the effect of interim trial court rulings within the same action. (See *King* v. *Order of United Commercial Travelers* (1948) 333 U.S. 153 [92 L.Ed. 608, 68 S.Ct. 488]; *Hallinan* v. *Mellon* (1963) 218 Cal.App.2d 342, 345 [32 Cal.Rptr. 446]; Case Notes (1949) 22 So.Cal.L.Rev. 176, 186; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, §§ 763, 783 and 786 at pp. 730, 753-755 and 757-758, respectively.)

This limitation is underscored by recognition that the rationale underlying the doctrine of stare decisis—the public policy of ensuring certainty and consistency in the application of case law decisions in later cases (*Ball* v. *Rodgers* (1960) 187 Cal.App.2d 442, 449-450 [9 Cal.Rptr. 666])—has no application in the context of trial court rulings. Parties to an action are bound by the trial court's interim rulings unless the rulings are reversed upon trial court reconsideration or appellate review. (*Greenberg* v. *Superior Court* (1982) 131 Cal.App.3d 441, 445 [182 Cal.Rptr. 466]; *Blue Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005, 1013 [183 Cal.Rptr. 594].)

## B.

■ Neither is there merit in the contention that respondent's granting of the motion to quash divested it of jurisdiction to rule that minimum contacts exist as a basis for future acquisition of personal jurisdiction by effective service of process. Although we have found no reported decision directly addressing the question presented, our conclusion is compelled under recognized principles of jurisdiction.

■ A trial court has jurisdiction to make an initial determination as to its own subject matter or in personam jurisdiction or lack thereof when challenged by a "specially appearing" defendant. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 302-303 [109 P.2d 942, 132 A.L.R. 715]; *MIB, Inc.* v. *Superior Court* (1980) 106 Cal.App.3d 228 [164 Cal.Rptr. 828].) A trial court's jurisdiction to determine personal jurisdiction is distinct from its general jurisdiction to make a binding determination against a defendant relating to the merits of the action. Special jurisdiction to determine jurisdiction is plenary and may not be terminated or inhibited by other courts until the jurisdictional issues are determined. (*Abelleira* v. *District*

*Court of Appeal, supra,* at p. 303; 2 Witkin, Cal. Procedure, Jurisdiction, *op. cit. supra,* §§ 273 and 274, pp. 675-678.) While in personam jurisdiction over defendant depends upon valid service and demonstration of minimum contacts, the trial court's jurisdiction to determine jurisdiction arises from the act of service of the complaint and summons and from defendant's special appearance in the action to compel preliminary determination of jurisdictional issues. Thus, a negative determination as to one criterion need not vitiate both types of jurisdiction.

■ Personal jurisdiction over a nonresident defendant depends upon the existence of essentially two criteria: first, a *basis* for jurisdiction must exist due to defendant's minimum contacts with the forum state; second, given that basis for jurisdiction, jurisdiction must be *acquired* by service of process in strict compliance with the requirements of our service statutes. (§§ 412.10-417.40.) Upon challenge by a specially appearing nonresident defendant pursuant to section 418.10, a plaintiff must establish that both criteria are met. (2 Witkin, Cal. Procedure Jurisdiction, *op. cit. supra,* §§ 81, 82 and 84, pp. 451-452, 454-455; 1969 Judicial Council Report, appen. at p. 70 (reprinted at 14 West's Ann. Cal. Code of Civ. Proc. (1973 ed.) § 418.10, p. 645); *Thomas J. Palmer, Inc.* v. *Turkiye Is Bankasi A.S.* (1980) 105 Cal.App.3d 135, 148 [164 Cal.Rptr. 181].) ■ Since jurisdiction to consider an issue is coextensive with jurisdiction to determine it, it follows that trial courts have jurisdiction to make a determination as to each jurisdictional criterion that is challenged by the motion to quash. This jurisdiction is not threatened by a negative determination of one criterion nor by the particular priority in which the criteria are determined. (See *GMS Properties, Inc.* v. *Superior Court* (1963) 219 Cal.App.2d 407, 415 [33 Cal.Rptr. 163].)

From these principles it follows that a determination that personal jurisdiction is lacking only precludes the trial court from rendering any binding ruling against the defendant concerning the merits of the action; this does not retroactively divest the court of its jurisdiction to hear and determine all the jurisdiction issues raised by defendant's motion to quash.

Defendant's reliance upon *Sternbeck* v. *Buck* (1957) 148 Cal.App.2d 829 [307 P.2d 970], for a contrary rule is inapposite. *Sternbeck* involved a direct attack on a default judgment by a subsequent action in equity claiming that the prior judgment was not supported by valid service of process on the defaulted defendant. *Sternbeck* held, at page 834, that a denial of a motion brought in the first action to set aside a default judgment for lack of valid service of process has no res judicata effect against a direct attack on jurisdiction by the later action. Additionally, in the absence of valid service of process "the court has no jurisdiction whatsoever over the defendant, its

judgment is a complete nullity and should, after proper proceedings, be set aside." (*Ibid.*) Thus, neither the facts nor the analysis in *Sternbeck* concern the question here presented. *Sternbeck* addressed only the lack of trial court jurisdiction to enter a binding judgment on the merits against a defendant as to whom personal jurisdiction was not acquired; it did not concern the issue of jurisdiction to determine jurisdiction, which is central to this mandate proceeding. ■ A case is not authority for an issue not raised by its facts nor considered. (*People* v. *Ceballos* (1974) 12 Cal.3d 470, 481 [116 Cal.Rptr. 233, 526 P.2d 241].) For similar reasons, *In re Marriage of Merideth* (1982) 129 Cal.App.3d 356 [180 Cal.Rptr. 909], is also inapposite.

### C.

Although we view our conclusion to be compelled under the principles discussed, we point out that this conclusion yields preferable procedural consequences. Judicial economy and the parties benefit from a complete resolution of jurisdictional questions on the first motion to quash. An initial determination that sufficient contacts do not exist, if upheld on appellate review, saves the courts and the parties the wasted effort of a new service and a second motion to quash. Also, if a trial court reconsiders and reverses its negative ruling on service, it would not have to go back and determine the minimum contacts issue de novo. Similarly, if plaintiff seeks appellate review of a determination of ineffective service, concurrent review of the determination of minimum contacts could be achieved, potentially saving the courts and parties from a useless new service of process, a second motion to quash, and piecemeal determination of interdependent jurisdiction issues. (See *GMS Properties, Inc.* v. *Superior Court, supra,* 219 Cal.App.2d 407.)

### II

■ The remaining question is whether respondent abused its discretion in refusing to reconsider the merits of the minimum-contact issues.

As stated, trial courts have inherent jurisdiction to reconsider their interim rulings until those rulings become final by entry of judgment. (*Greenberg* v. *Superior Court, supra,* 131 Cal.App.3d at p. 445; *Blue Mountain Development Co.* v. *Carville, supra,* 132 Cal.App.3d at pp. 1013-1014.)

Our conclusion that the initial determination of minimum contacts survives the granting of the first motion to quash does not mean that respondent could properly refuse to reconsider the merits of the issue.

## A.

■ Respondent cited defendant's failure to have sought immediate trial court reconsideration or writ review of the October 1987 determination of minimum contacts as grounds to deny reconsideration. It also stated that it could not reconsider a determination of an issue decided by another judge of the court.

As to defendant's omission to immediately seek trial court reconsideration, we point out that defendant was successful on its first motion to quash and was "out of the action." Until such time as plaintiff effected new service of process defendant had no incentive or need for further challenge. Defendant would have had to enter a special appearance to seek reconsideration when there was no certainty the issue would not remain moot. Until defendant was re-served, respondent had no jurisdiction to make binding adverse rulings on the merits against defendant. Thus, defendant, a domiciliary of West Germany, had no immediate need to take affirmative steps in a foreign trial court against the possibility it would be re-served with process; such foreign defendants should not be placed under a costly duty to take affirmative steps in the action when all other proceedings concerning them are in abeyance.

Neither does defendant's delay beyond the 10-day limitation period of section 1008 preclude present reconsideration. As already pointed out, trial courts have always had inherent jurisdiction to reconsider interim rulings until the ruling is finalized by entry of judgment, even in the absence of newly discovered evidence. (*Blue Mountain Development Co.* v. *Carville, supra,* 132 Cal.App.3d at p. 1013.) Accordingly, the limitation period of section 1008 is not jurisdictional.

## B.

■ Defendant's omission to seek immediate writ review does not preclude present trial court reconsideration of the issue. Under subdivision (c) of section 418.10 a nonresident civil defendant is required to petition for mandate review of a *denial* of a motion to quash within 10 days of service of the notice of ruling. But defendant's motion was *granted* and defendant was precluded by the language of the statute from seeking writ review under section 418.10.

It might be argued that defendant could have petitioned for review under the general provisions of section 1086 as a "party beneficially interested." Assuming that defendant comes within section 1086, which contains no specific time limitation for filings, it does not follow that immediate filing of

a petition was required or that the delay occasioned by plaintiff's efforts to attempt a valid new service of process must be held against defendant under the doctrine of laches or otherwise. There was justification for the delay and no substantial prejudice to plaintiff.

Finally, defendant's second motion to quash is supported by new declarations containing different and more detailed facts suggesting the absence of minimum contacts and creating direct conflict with the declarations submitted by plaintiff in opposition to the first motion. It is not unreasonable for defendant to have elected to seek a trial court determination on the issue, based on its new showing of facts, before seeking appellate review.

## C.

Neither does the general rule that one trial court judge may not reconsider and overrule an interim ruling of another judge justify respondent's refusal to reconsider the minimum-contacts issue, particularly in view of the new facts presented.

An established exception to the general rule limiting reconsideration is that where the judge who made the initial ruling is unavailable to reconsider the motion, a different judge may entertain the reconsideration motion. (*New Tech Developments* v. *Bank of Nova Scotia* (1987) 191 Cal.App.3d 1065, 1069-1070 [236 Cal.Rptr. 746].) This exception reconciles the jurisdiction of a trial court to reconsider and correct its erroneous interim rulings to achieve justice (*Harth* v. *Ten Eyck* (1941) 16 Cal.2d 829, 833-834 [108 P.2d 675]) with the general rule's recognition of the comity between judges of a trial court. The proper procedure upon a motion for reconsideration or a renewed motion is for the second judge to direct the moving party to the judge who ruled on the first motion. If the original judge is unavailable, as in this case, the second judge may hear the reconsideration motion. (See *Board of Medical Quality Assurance* v. *Superior Court* (1988) 203 Cal.App.3d 691, 703-704 [250 Cal.Rptr. 182]; *Ford* v. *Superior Court* (1986) 188 Cal.App.3d 737, 741 [233 Cal.Rptr. 607].)

## III

Having determined that respondent has jurisdiction and discretion to reconsider the minimum-contacts question upon a proper showing, we conclude that the record demonstrates that discretion should be exercised in favor of reconsideration.

When a nonresident defendant challenges personal jurisdiction the burden shifts to the plaintiff to demonstrate by a preponderance of the

evidence that all necessary jurisdictional criteria are met. (*Thomas J. Palmer, Inc.* v. *Turkiye Is Bankasi A.S., supra,* 105 Cal.App.3d at p. 148.) This burden must be met by competent evidence in affidavits and authenticated documentary evidence. An unverified complaint may not be considered as an affidavit supplying necessary facts. (*Sheard* v. *Superior Court* (1974) 40 Cal.App.3d 207, 212 [114 Cal.Rptr. 743].)

■ Plaintiff's verified declarations submitted in opposition to the first motion consist primarily of vague assertions of ultimate facts rather than specific evidentiary facts permitting a court to form an independent conclusion on the issue. (See *Thomas J. Palmer, Inc.* v. *Turkiye Is Bankasi A.S., supra,* 105 Cal.App.3d at pp. 148-149; *Sheard* v. *Superior Court, supra,* 40 Cal.App.3d at p. 212.)

For example, plaintiff does not show precisely when, where, how or by whom the alleged oral contract between it and defendant was made. Neither are evidentiary facts or supporting documents offered to show that defendant, as opposed to an entity doing business as Ziller Technik, engaged in an ongoing business relationship with plaintiff and regularly provided products to plaintiff from 1985 through February 1987 in a manner similar to the proven ongoing relationship between plaintiff and Ziller Technik. Without deciding the matter, we see plaintiff's evidence as establishing only that Ziller Technik supplied plaintiff with a product line and that plaintiff promoted that product line for Ziller Technik from approximately 1982 through 1984.

Plaintiff has not submitted probative evidence demonstrating the precise legal status of and relationship between Ziller Technik and defendant Ziller Electronic Labs. While the two names, and the disclosed common directors and officers of the two suggest some relationship, it appears pure speculation to conclude that the companies are identical, alter egos, or have such a control relationship as to subject defendant to personal jurisdiction here. Plaintiff's burden of proof is not met by its assertions that defendant assumed the contractual obligation owed by the defunct Ziller Technik or that, in plaintiff's view, defendant is not a separate and distinct legal entity from Ziller Technik for purposes of plaintiff's causes of action.

The record further shows that although defendant filed extensive evidentiary objections to plaintiff's declarations, respondent did not expressly rule upon those objections. To the extent that the affirmative determination of minimum contacts effects an implicit overruling of the evidentiary objections, further doubt is cast.

## IV

Because we have concluded that the trial court has and should exercise discretion to reconsider the minimum-contacts question, we decline petitioner's invitation to presently review the merits of the minimum-contacts issue. (*Dulaney* v. *Municipal Court* (1974) 11 Cal.3d 77, 81, fn. 3 [112 Cal.Rptr. 777, 520 P.2d 1].) The issues of fact raised by the conflicting declarations of the parties should be resolved by the trial court under applicable evidentiary rules. This court may then review respondent's determination as a question of law. (See *Griffith Co.* v. *San Diego Col. for Women* (1955) 45 Cal.2d 501, 507-508 [289 P.2d 476, 47 A.L.R.2d 1349].)

## V

Nothing in this discussion should be construed to preclude respondent from considering (to the extent permitted by applicable rules of evidence) the declarations submitted by plaintiff in opposition to the first motion to quash. Nor should this disposition be interpreted to preclude plaintiff from conducting discovery limited to the issue of minimum contacts to enable it to meet its burden of proof. (*1880 Corp.* v. *Superior Court* (1962) 57 Cal.2d 840, 843 [22 Cal.Rptr. 209, 371 P.2d 985].)

## VI

Let a peremptory writ of mandate issue directing respondent to vacate its order of May 3, 1988, in Los Angeles Superior Court case No. C647324, Grosh Scenic Studios v. Ziller Electronic Lab GmbH, which denied defendant's motion to quash, and thereafter reconsider and determine the issue of minimum contacts on its merits.

McClosky, J., and Goertzen, J., concurred.